FARMERS' UNION TRADING CO. OF BUTTE, Respondent
*v.* RYAN, Appellant.
No. 9202.
Submitted November 25, 1953. Decided February 19, 1954.
Rehearing Denied March 4, 1954.
266 Pac. (2d) 1032.

MR. JUSTICE FREEBOURN:

The Farmers' Union Trading Company of Butte, a corpora-

(501)

tion, plaintiff and respondent, after trial in the district court, was awarded a judgment for $783.74 and costs by the trial judge sitting without a jury. From this judgment Thomas Ryan, defendant and appellant, appealed.

Although plaintiff's amended complaint set up two causes of action, upon trial it elected to stand on but one, a cause of action for goods sold and delivered, judgment for $676.90, with interest thereon, being prayed for. By answer defendant denied plaintiff's claim, asserting it had been satisfied, and counterclaimed for $73.72, allegedly due. The allegations of the counterclaim were put in issue by the reply.

Plaintiff's books of account showed Ryan owed plaintiff $676.90. Concerning Ryan's account his counsel said: "We admit that all of the charges and the credits on the account are correct * * * but we claim more credits * * *."

It is Ryan's contention, in claiming "more credits," that his account should have been credited with one-half the value of 608 sacks of potatoes delivered to plaintiff by one Oliver Touchette in September 1947, and that, as a matter of fact, he did not receive such credit, the entire value of such potatoes having been credited to Touchette's account; both Ryan and Touchette then being indebted to plaintiff.

Ryan further contends that prior to the delivery of such potatoes he had orally notified J. Bernard Garrison, plaintiff's manager, who died June 14, 1949, that Ryan owned one-half of the potatoes, and that upon discovery by Ryan in early October 1947, that Touchette had received credit for all the potatoes, Ryan called the matter to Garrison's attention, who orally promised to give Ryan credit for one-half of the potatoes.

The trial court could find from the evidence that the potatoes were planted, grown and dug by Touchette, on Ryan's land, under an oral agreement whereby each furnished one-half of the seed and each was to receive one-half of the potatoes raised and marketed.

The evidence shows that Ryan negotiated the sale of the potatoes to Garrison, Touchette testifying: "He [Ryan] had the

privilege to sell the spuds and I had the privilege to sell them,'' it being agreed that each was ''to receive half of the potatoes raised and marketed.'' It appears that Touchette hauled and delivered the potatoes, Ryan testifying: ''The way it was, was Mr. Touchette was supposed to haul them at his expense and I furnished the gas out of my tank for the hauling.''

Although Ryan asserts that plantiff erred in crediting Touchette's account with all the potatoes, he testified: ''I told him [Touchette] Garrison bought them * * * and to bring them to Butte and give them to Garrison for the money that Touchette owed them.'' If this statement is true, and the trial judge could so believe, even though other statements of Ryan tend to show otherwise, the entire value of the 608 sacks of potatoes was properly credited to Touchette's account, and the judgment was properly rendered.

Though Ryan contends that Garrison was responsible for Ryan's not receiving the credit claimed and that he looked to Garrison to see that he received such credit, his testimony shows: ''I told Garrison I owned half of the potatoes then I went and told Mr. Touchette to straighten up those potatoes. * * * I was relying on Oliver to get my bill straightened up * * *''.

Death has muted J. Bernard Garrison's lips; yet his failure to give Ryan the credit now claimed speaks as eloquently as could words on the merits of such claim. Commencing early in October 1947 up until Garrison's death in June 1949, on ''half of the times I would go to Butte,'' Ryan assertedly would importune Garrison to give Ryan the credit claimed, yet such credit was never allowed, even though from a dollar and cent standpoint it made no difference to Garrison, an apparent friend of Ryan's if the total credit went to Touchette or one-half to Touchette and one-half to Ryan.

Clearly there was evidence sufficient to justify the trial court's judgment.

We have examined appellant's specifications of error and find them to be without merit.

For the reasons stated the judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, ANGSTMAN, and ANDERSON, concur.